**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 26-002** |
| | : | |
| | : | |
| **JEFFREY HILL** | : | |

### <u>DEFENDANT'S SENTENCING MEMORANDUM</u>

This memorandum is respectfully submitted on behalf of Jeffrey Hill to assist the Court in fashioning a fair and just sentence. Jeffrey Hill was arrested by the Sinking Spring Borough Police Department, on January 24, 2025, after they were contacted by the Berks County Probation Officer supervising Mr. Hill. This case stems from Mr. Hill's possession of firearms in his home. While it is undisputed that Mr. Hill was ineligible to possess a firearm, it should be noted that there is no suggestion that Mr. Hill was in possession of the firearm for any illegal purpose. On the contrary, since childhood Mr. Hill has had a fascination with guns and other machinery and enjoyed tinkering with machinery and building various pieces of equipment. Prior to his arrest, he was employed by a company that specialized in developing and manufacturing carbon-based materials for use by companies such as Lockheed Martin. His employment for the last ten years has involved aspects of fabricating or developing devices or components for various uses. Mr. Hill well understands that he will have to satisfy his curiosity and interest in tinkering without including firearms.

Mr. Hill has been in continuous custody since his arrest on January 24, 2025. On January 5, 2026, The United States Attorney's Office for the Eastern District of Pennsylvania filed a one-count Information charging Jeffrey Hill with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1). On January 21, 2026, Mr. Hill appeared before this Honorable Court and

waived prosecution by Indictment and entered a guilty plea to Count One of the Information, pursuant to a written plea agreement. Further, Mr. Hill agrees to forfeit the firearms and ammunition at issue in the instant case.

Mr. Hill has accepted responsibility for his actions and admitted to his criminal conduct. United States Probation Officer Marc E. Corpora has prepared a presentence investigation report. The PSR sets the advisory sentencing guidelines at 30-37 months based on an offense level of 17, and criminal history category of III.   The guidelines are not mandatory and there is no statutory mandatory sentence required here. The defense submits to the Court that a sentence of 30 months is both sufficient and appropriate.

I.        **APPLICATION OF THE STATUTORY FACTORS TO THIS CASE**

In the present case, the Court must consider all the factors identified in 18 U.S.C. § 3553(a) to craft a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a)(1). Counsel submits that the factors are as follows in Mr. Hill's case:

> **A.        The Nature and Circumstances of the Offense and Mr. Hill's History and Characteristics**

Mr. Hill's history and characteristics weigh in favor of the recommended sentence in this case. The Presentence Report (PSR) prepared by United States Probation Officer Mark E. Corpora thoroughly and accurately details his upbringing. Mr. Hill is now 27 years old. Mr. Hill was the only child born to his parents, Jeffrey Hill and T'Pring Williams. He was born in Norristown, Pa and raised, primarily by his mother, in Pottstown, Pennsylvania. He has one maternal half-sibling and five paternal half-siblings. Mr. Hill is close to all his siblings. He was also raised briefly by his maternal grandmother, Rhunetta Williams, during a fractious period

2

with his mother when he was a young teen.

Mr. Hill's early childhood was terribly difficult and unstable. The family was poor, and his mother became addicted to pills after an accident, which caused constant discord in the home. She became reclusive and disconnected from her children and her responsibilities. Even before her accident, she was not a stable or consistent source of support. The defendant recalls instances of being left alone, instances of being sexually abused by older family members, times when the electricity was shut off or there was food insufficiency. She was physically, verbally, and emotionally abusive towards the defendant, and he recalls an instance when she had him placed in foster care for a week until his grandmother picked him up. During the years between 9 and 16, Mr. Hill went back and forth between his parents' homes. His father also struggled with alcohol and drugs, and the defendant reported episodes of abuse by his father; nevertheless, he felt that his father's home was more stable. Though he spent years without speaking to his mother, when she was at the height of her addiction, eventually they mended their relationship. Currently she is sober and supportive of her son.

As a result of the difficult circumstances, the defendant had to "grow up a little faster" than he might have otherwise. He has been living on his own since he was 17 years old. He also married when he was 17, to a childhood friend, Monika (Cortez) Hill. He and Monika are supportive of each other and have a "great" relationship. Mrs. Hill describes him as a loving and caring person. Mrs. Hill is employed full-time, caring for individuals with disabilities. The couple were residing together in a rented home at the time of the defendant's arrest. Since the defendant's arrest, Mrs. Hill has moved to a different apartment in Pottstown. When the defendant is released from custody, they will again live together. She understands that Mr. Hill

will need to find alternative hobbies, and they've discussed the potential for him to work on cars.

Despite being very smart and capable, the defendant had a challenging time adjusting in school and never finished high school. He subsequently enrolled in Berks Technical Institute as a criminal justice major but withdrew before completing any course. He does have his forklift certification and is a skilled and self-taught machinist and fabricator. He has maintained employment in this capacity and has the ability to earn a living and support himself.

Mr. Hill has a history of marijuana use that began at 16 years old. He has a valid medical marijuana card and uses medical marijuana for back pain relief as opposed to pills or other pain medicine. Mr. Hill's mental health history is thoroughly set out in the Pre-Sentence Investigation report. Family court records reflect a history of mental health issues dating back to early childhood. He was previously diagnosed with Bi-Polar disorder, oppositional defiant disorder, post-traumatic stress disorder, and various conduct and mood disorders. While in placement he was prescribed various medications. He has not had any mental health services since 2015.

Mr. Hill is very conscious and concerned about the "stigma" of a mental health diagnosis. He acknowledges his struggles and treatment growing up. He does contend that reported episodes of acting out were often exaggerated by reporters but admits to having difficulties fitting in and often feeling frustrated and angry. He does not believe that treatment would necessarily benefit him when he is released, and feels that consistent employment, a pro-social hobby, and a stable home environment with his wife will help to alleviate stress and anxiety.

**B.** **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

1. *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

4

Mr. Hill recognizes the seriousness of his conduct and has accepted responsibility. The recommended sentence is within the recommended sentencing guideline range and is supported by consideration of the applicable sentencing factors.

2.  *To afford adequate deterrence to criminal conduct.*

Similarly, Mr. Hill's prosecution and conviction for this case in the serious venue of federal court, along with the risk of serving the significant prison term that could be imposed, provides a more-than-adequate general deterrent to other, similarly situated individuals. Moreover, it is well-established that the *certainty* of punishment, not the *severity* of it, has the most significant general deterrent effect. *See, e.g.*, CESARE BECCARIA, ON CRIMES AND PUNISHMENTS AND OTHER WRITINGS 63 (Jeffrey Bellamy, ed.; Jeffrey Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as a Market System*, 12 LEGAL STUD. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison*, *in* CRIME 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin & Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*, 39 CRIMINOLOGY 865 (2001); Michael Tonry, *The Functions of Sentencing and Sentencing Reform*, 58 STAN. L. REV. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about Criminal Deterrence?*, 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity.).   Therefore, the recommended sentence will send an appropriate message to others and deter people from committing similar crimes.

5

3. *To protect the public from further crimes of the defendant.*

Mr. Hill's personal experience in this case, taken together with the recommended sentence, will provide sufficient individual deterrence against Mr. Hill repeating this, or any other, offense. For all these reasons, the Court can be assured that the recommended sentence will adequately protect the public against further crimes by Mr. Hill.

4. *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

As discussed above, Mr. Hill may benefit from any educational or vocational training, as well as psychological treatment that are offered both during his incarceration and once released. The recommended sentence is not insignificant, and Mr. Hill can continue to participate in a variety of rehabilitative and corrective programming while serving the recommended sentence.

C.    **Kinds of Sentences Available**

The range of sentences statutorily available to the Court are listed in Part D of the PSR.

II.    **CONCLUSION**

Based on the above stated reasons, the defense respectfully requests this Court impose a sentence of 30 months incarceration. In addition to the instance case, Mr. Hill faces a violation of probation in Berks County where he faces additional incarceration. The recommended sentence will protect the public, deter Mr. Hill and others, and sufficiently and justly punish him for his offense. As such, the sentence is reasonable and appropriate; it is sufficient, but not greater than necessary to satisfy the purposes of sentencing as set forth in statute.

Respectfully submitted,

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Federal Defender

6

## CERTIFICATE OF SERVICE

I, Elizabeth L. Toplin, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have caused a copy of Defendant's Sentencing Memorandum to be filed and served electronically through the Eastern District Clerk's Office Electronic Case Filing and/or electronic mail upon:

Rebecca J. Kulik,
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

Marc E. Corpora,
United States Probation Officer
United States Probation Office
William J. Green Building
600 Arch Street
Philadelphia, Pennsylvania 19106.

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Federal Defender

DATE: May 6, 2026